IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DIANA REESE

    PLAINTIFF,

VS.                                     CV NO.: 2:17-CV-00870

CBE, INC. D/B/A CAPITOL
BUSINESS EQUIPMENT, INC.

    DEFENDANT.                    JURY TRIAL DEMANDED

## AMENDED AND RESTATED COMPLAINT

### I. JURISDICTION

1. This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 1367, 2201, 2202 and 29 U.S.C. § 621. This is a suit authorized and instituted pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, 626(d)(1), *et seq.* (ADEA). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 1367, 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000e et seq. This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C.

1

§ 2000e, et seq. (Title VII). The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by Title VII providing for injunctive and other relief against sex discrimination, sexual harassment, and retaliation.

3. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II. PARTIES

4. Plaintiff, Diana Reese, (hereinafter "Plaintiff") is a resident of Auburn, Lee County, Alabama, and performed work for the Defendant in the counties composing the Middle District of Alabama during the events of this case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Middle District, Montgomery Division.

5. Defendant CBE, Inc. d/b/a Capitol Business Equipment, Inc., (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 621(a)(2), and 29 U.S.C. § 201, *et seq.*

Defendant employed at least twenty (20) persons during the current or preceding calendar year.  Therefore, this Court has personal jurisdiction over Defendant.

### III. STATEMENT OF FACTS

6. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-5 above.

7. Defendant hired Plaintiff on or about September 19, 2011.

8. Defendant employed Plaintiff as a warranty clerk.

9. Defendant is in the business of high-end video surveillance.

10. Plaintiff performed the duties of warranty clerk until Defendant terminated Plaintiff's co-worker, Lindsey Cole.

11. Plaintiff assumed Cole's job responsibilities in purchasing and hotline while continuing to do warranty and/or in-transit work.

12. In August 2016, Defendant hired a new individual to perform the warranty work.

13. Defendant employed Danny Nelson.

14. Nelson worked as a shipping clerk.

15. Nelson sexually harassed Plaintiff when he "squeezed" by Plaintiff in a space when there was plenty of room to get by.

16. Each time Nelson "squeezed by" Plaintiff, his crotch was placed against Plaintiff's rear-end.

17. On each of these occasions, Plaintiff told Nelson to stop, but he did not stop his contact.

18. Defendant employed Russell Washburn.

19. Defendant employed Russell Washburn in the position of site manager.

20. On more than one occasion, Plaintiff reported Nelson's conduct to Russell Washburn.

21. Plaintiff reported to Washburn that, in addition to the physical contact, Nelson made sexual comments about women riding on horses, while wearing bikinis with bouncing boobies, sex acts, and other sexually inappropriate comments.

22. Washburn directed that Nelson stay ten feet away from Plaintiff.

23. Almost immediately after Washburn established the ten-foot rule, Nelson intentionally ran into Plaintiff.

24. Plaintiff reported Nelson's physical behavior to Washburn.

25. Washburn immediately told Plaintiff that she was being terminated because "I don't have time to referee. I have a business to run."

26. Defendant took no action against Nelson, and, upon information and belief, Nelson continues to work for Defendant.

27. Upon information and belief, Nelson also sexually harassed Lindsey Cole during and prior Nelson's sexual harassment of the Plaintiff.

28. Defendant terminated Susan Thaggard for complaining about sexist comments made by her boss, Mike Ledbetter.

29. Defendant terminated Shawna Haney for complaining about sexual harassment committed by Defendant's owner Loring White.

30. Defendant terminated Plaintiff's employment on or about September 22, 2016.

31. Defendant's owner, Loring White, ratified the decision to terminate Plaintiff's employment.

32. Following the termination of Plaintiff's employment, Defendant placed an inexperienced, far less qualified woman, in her 20s, Sherry Chance, into Plaintiff's former position.

33. Shortly after Defendant terminated Plaintiff's employment, Defendant placed a substantially younger employee in Plaintiff's former position.

## IV. COUNT ONE – Age Discrimination (ADEA) – Termination

34. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-33 above.

35. Defendant hired Plaintiff on or about September 19, 2011.

36. Defendant employed Plaintiff as a warranty clerk.

37. Plaintiff later performed the responsibilities of purchasing and hotline while continuing to do warranty and/or in-transit work.

38. Defendant terminated Plaintiff's employment on or about September 22, 2016.

39. Defendant's owner, Loring White, ratified the decision to terminate Plaintiff's employment.

40. At the time Defendant terminated Plaintiff's employment, Plaintiff was fifty-nine (59) years of age.

41. Following the termination of Plaintiff's employment, Defendant placed an inexperienced, far less qualified woman, in her 20s, Sherry Chance, into Plaintiff's former position.

42. Shortly after Defendant terminated Plaintiff's employment, Defendant placed a substantially younger employee in Plaintiff's former position.

43. Defendant employed Russell Washburn.

44. Defendant employed Russell Washburn in the position of site manager.

45. Washburn informed Plaintiff that Defendant terminated her employment.

46. Defendant employed Danny Nelson.

47. Nelson worked as a shipping clerk.

48. Nelson sexually harassed Plaintiff when he "squeezed" by Plaintiff in a space when there was plenty of room to get by.

49. Each time Nelson "squeezed by" Plaintiff, his crotch was placed against Plaintiff's rear-end.

50. On more than one occasion, Plaintiff reported Nelson's conduct to Russell Washburn.

51. Plaintiff reported to Washburn that, in addition to the physical contact, Nelson made sexual comments about women riding on horses, while wearing bikinis with bouncing boobies, sex acts, and other sexually inappropriate comments.

52. Washburn directed that Nelson stay ten feet away from Plaintiff.

53. Almost immediately after Washburn established the ten-foot rule, Nelson intentionally ran into Plaintiff.

54. Plaintiff reported Nelson's physical behavior to Washburn.

55. Washburn immediately told Plaintiff that she was being terminated because "I don't have time to referee. I have a business to run."

56. Defendant took no action against Nelson, and, upon information and belief, Nelson continues to work for Defendant.

57. Upon and information and belief, Nelson is substantially younger than Plaintiff.

58. Defendant's actions in terminating Plaintiff, while not terminating Nelson, was a violation of the ADEA.

59. As a result of Defendant's violation of ADEA, Plaintiff has been damaged, suffering loss of pay and benefits.

### V. COUNT TWO - Title VII – Sexually Hostile Work Environment

60. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 59 above.

61. Plaintiff is a female.

62. Defendant hired Plaintiff on or about September 19, 2011.

63. Defendant employed Danny Nelson.

64. Nelson worked as a shipping clerk.

65. Nelson sexually harassed Plaintiff when he "squeezed" by Plaintiff in a space when there was plenty of room to get by.

66. Each time Nelson "squeezed by" Plaintiff, his crotch was placed against Plaintiff's rear-end.

67. On each of these occasions, Plaintiff told Nelson to stop, but he did not stop his contact.

68. Defendant employed Russell Washburn.

69. Defendant employed Russell Washburn in the position of site manager.

70. On more than one occasion, Plaintiff reported Nelson's conduct to Russell Washburn.

71. Plaintiff reported to Washburn that, in addition to the physical contact, Nelson made sexual comments about women riding on horses, while wearing bikinis with bouncing boobies, sex acts, and other sexually inappropriate comments.

72. Washburn directed that Nelson stay ten feet away from Plaintiff.

73. Almost immediately after Washburn established the ten-foot rule, Nelson intentionally ran into Plaintiff.

74. Plaintiff reported Nelson's physical behavior to Washburn.

75. Washburn immediately told Plaintiff that she was being terminated because "I don't have time to referee. I have a business to run."

76. Defendant took no action against Nelson, and, upon information and belief, Nelson continues to work for Defendant.

77. Upon information and belief, Nelson also sexually harassed Lindsey Cole during and prior Nelson's sexual harassment of the Plaintiff.

78. Defendant terminated Susan Thaggard for complaining about sexist comments made by her boss, Mike Ledbetter.

79. Defendant terminated Shawna Haney for complaining about sexual harassment committed by Defendant's owner Loring White.

80. Defendant terminated Plaintiff's employment on or about September 22, 2016.

81. Defendant's owner, Loring White, ratified the decision to terminate Plaintiff's employment.

82. Nelson's sexual harassment consisted of touchings, inappropriate and/or sexually charged remarks as described above.

83. Plaintiff complied with Defendant's harassment policy by reporting Nelson's sexual harassment on multiple occasions.

84. Defendant created a sexual hostile work environment through Nelson's subjecting Plaintiff to gestures, touchings, and comments that occurred on a daily basis.

85. Throughout the course of her employment with Defendant, Nelson's actions subjected Plaintiff to a sexual hostile work environment.

86. Plaintiff complied with Defendant's policies regarding reporting the sexual harassment by reporting Nelson's conduct to Defendant's Site Manager Washburn.

87. Despite Plaintiff's efforts to report the sexually harassing conduct, Nelson continued to sexual harass the Plaintiff.

88. Defendant failed to adequately train its management personnel in regard to prohibitions against sexual harassment of co-workers.

89. Defendant's actions in failing to protect Plaintiff from a sexual hostile work environment created by Nelson was a violation of Title VII.

90. Defendant's actions in terminating Plaintiff's employment because she reported the sexual hostile work environment created by Nelson was a violation of Title VII.

91. As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VI. COUNT THREE – RETALIATION – Title VII – Termination

92. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 92 above.

93. On or about September 7, 2016, Plaintiff reported to Defendant's management, including Russell Washburn and Sherri Ingram, that Nelson engaged in a sexually inappropriate behavior.

94. On September 8, 2016, Ingram sought additional information, and as a result, Plaintiff reported Nelson's sexually inappropriate comments on Ingram.

95. To remedy the situation, Defendant's management directed Plaintiff and Nelson to maintain a ten-foot distance from one another.

96. Washburn directed that Nelson stay ten feet away from Plaintiff.

97. Almost immediately after Washburn established the ten-foot rule, Nelson intentionally ran into Plaintiff.

98. Plaintiff reported Nelson's physical behavior to Washburn.

99. Washburn immediately told Plaintiff that she was being terminated because "I don't have time to referee. I have a business to run."

100. Defendant took no action against Nelson, and, upon information and belief, Nelson continues to work for Defendant.

101. Plaintiff reported another touching incident on or about September 21, 2016.

102. Defendant terminated Plaintiff's employment on September 22, 2016.

103. Defendant's owner, Loring White, ratified the decision to terminate Plaintiff's employment.

104. But for Plaintiff's complaint of sexual harassment, Defendant would not have terminated Plaintiff's employment.

105. In violation of Title VII, Defendant terminated Plaintiff's employment for her "continued insistence of Nelson's misbehavior" of sexually harassing conduct.

106. In violation of Title VII, Defendant's decision to terminate Plaintiff was because of her complaints of sexual harassment.

107. As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VII. COUNT FOUR – Assault and Battery

108. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 107 above.

109. Defendant employed Danny Nelson.

110. Nelson worked as a shipping clerk.

111. Nelson sexually harassed Plaintiff when he "squeezed" by Plaintiff in a space when there was plenty of room to get by.

112. Each time Nelson "squeezed by" Plaintiff, his crotch was placed against Plaintiff's rear-end.

113. On each of these occasions, Plaintiff told Nelson to stop, but he did not stop his contact.

114. Defendant employed Russell Washburn.

115. Defendant employed Russell Washburn in the position of site manager.

116. On more than one occasion, Plaintiff reported Nelson's conduct to Russell Washburn.

117. Plaintiff reported to Washburn that, in addition to the physical contact, Nelson made sexual comments about women riding on horses, while wearing bikinis with bouncing boobies, sex acts, and other sexually inappropriate comments.

118. Plaintiff reported another touching incident on or about September 21, 2016.

119. Nelson, as an Agent of Defendant, subjected Plaintiff to offensive, non-consensual sexual touchings.

120. Plaintiff's claims are brought against Defendant because of its knowledge of the actions committed its employee/agent, Nelson.

121. As a result of the assault and battery committed by Nelson, Plaintiff has suffered damages in the form of mental anguish.

### VIII. COUNT FIVE – Invasion of Privacy

122. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 121 above.

123. Defendant employed Danny Nelson.

124. Nelson worked as a shipping clerk.

125. Nelson sexually harassed Plaintiff when he "squeezed" by Plaintiff in a space when there was plenty of room to get by.

126. Each time Nelson "squeezed by" Plaintiff, his crotch was placed against Plaintiff's rear-end.

127. On each of these occasions, Plaintiff told Nelson to stop, but he did not stop his contact.

128. Defendant employed Russell Washburn.

129. Defendant employed Russell Washburn in the position of site manager.

130. On more than one occasion, Plaintiff reported Nelson's conduct to Russell Washburn.

131. Plaintiff reported to Washburn that, in addition to the physical contact, Nelson made sexual comments about women riding on horses, while wearing bikinis with bouncing boobies, sex acts, and other sexually inappropriate comments.

132. Plaintiff reported another touching incident on or about September 21, 2016.

133. Nelson committed unwanted touchings and made sexually explicit comments that resulted in an invasion of privacy.

134. Plaintiff's claims are brought against Defendant because of its knowledge of the actions committed its employee/agent, Nelson.

135. The unwanted sexual harassment of Plaintiff violated her personal bodily privacy by exposing her to unwanted touchings and inappropriate sexual comments.

136. Defendant authorized, ratified and/or condoned the actions of its employee/agent, which amounted to invasion of privacy.

137. By reason of each and every act of Nelson, Defendant subjected Plaintiff to an invasion of privacy, causing damage to Plaintiff by causing her to suffer physical distress and/or mental anguish.

138. Plaintiff has been damaged as a result of Defendant's actions, suffering mental anguish, together with loss of pay and benefits.

### IX. COUNT SIX – Tort of Outrage

139. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 138 above.

140. Defendant employed Danny Nelson.

141. Nelson worked as a shipping clerk.

142. Nelson sexually harassed Plaintiff when he "squeezed" by Plaintiff in a space when there was plenty of room to get by.

143. Each time Nelson "squeezed by" Plaintiff, his crotch was placed against Plaintiff's rear-end.

144. On each of these occasions, Plaintiff told Nelson to stop, but he did not stop his contact.

145. Defendant employed Russell Washburn.

146. Defendant employed Russell Washburn in the position of site manager.

147. On more than one occasion, Plaintiff reported Nelson's conduct to Russell Washburn.

148. Plaintiff reported to Washburn that, in addition to the physical contact, Nelson made sexual comments about women riding on horses, while wearing bikinis with bouncing boobies, sex acts, and other sexually inappropriate comments.

149. Plaintiff reported another touching incident on or about September 21, 2016.

150. During the course of her employment, Defendant subjected Plaintiff to a sexually hostile work environment through the conduct of Nelson.

151. Nelson's comments to Plaintiff were sexual in nature.

152. Defendant authorized, ratified and/or condoned its employee/agent's actions, which amounted to the tort of outrage.

153. Plaintiff's claims are brought against Defendant because of its knowledge of the actions committed its employee/agent, Nelson.

154. Plaintiff has been damaged as a result of Defendant's actions, suffering mental anguish, together with other compensatory damages.

## X. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the ADEA;

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the

Defendant and at the Defendant's request from continuing to violate the terms of the Title VII of the Civil Rights Act of 1964;

    C.    Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

    D.    Award her back pay, together with employment benefits, front pay, liquidated damages; compensatory damages, punitive damages, special damages; nominal damages;

    E.    Attorneys' fees and costs;

    F.    Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 626 that the actions of Defendant violated the law; and,

    G.    Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Allen D. Arnold*

_____
Allen D. Arnold
Kira Y. Fonteneau
Counsel for the Plaintiffs

FONTENEAU & ARNOLD, LLC
A Member of Five Points Law Group, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
T: (205) 252-1550
F: (205) 502-4476
allen@5pointslaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this the 30th day of July 2018, a true and correct copy of the foregoing has been served via the Court's CM/ECF system to the following:

    Roy C. Dumas

 

_____
Of Counsel